### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| BLAKE LIVELY,<br><br>                       Movant,<br><br>v.<br><br>THE SKYLINE AGENCY LLC and ROZA KALANTARI,<br><br>                     Respondents. | No. 3:25-mc-63 |

### APPENDIX IN SUPPORT OF MOVANT'S MOTION TO COMPEL THE SKYLINE AGENCY LLC AND ROZA KALANTARI TO COMPLY WITH SUBPOENAS

Movant Blake Lively submits this Appendix in Support of its Motion to Compel Non-Parties The Skyline Agency LLC ("Skyline") and Roza Kalantari to Produce Subpoenaed Documents and Memorandum in Support, as follows:

| **Document** | **Page** |
|---|---|
| Declaration of Kristin E. Bender | APPX. 1-5 |
| Tab 1, First Skyline Privilege Log dated May 16, 2025 | APPX. 7-9 |
| Tab 2, Amended Skyline Privilege Log dated May 30, 2025 | APPX. 10-12 |
| Tab 3, Second Amended Skyline Privilege Log dated July 24, 2025 | APPX. 13-14 |
| Tab 4, C.D. Cal Transfer Memorandum Opinion and Order | APPX 15-21 |
| Tab 5, Lively's Subpoena to The Skyline Agency LLC dated March 10, 2025 | APPX 22-42 |
| Tab 6, Lively's Subpoena to Roza Kalantari dated April 25, 2025 | APPX 43-63 |

Dated: August 6, 2025

Respectfully submitted,
/s/ Samuel T. Mallick

Samuel T. Mallick
Haynes and Boone, LLP

2801 N Harwood St Suite 2300
Dallas, TX 75201
(214) 651-5962
sam.mallick@haynesboone.com

Laura Lee Prather
Michael J. Lambert
Haynes and Boone, LLP
98 San Jacinto Boulevard
Suite 1500
Austin, TX 78701
(512) 867-8400
laura.prather@haynesboone.com
michael.lambert@haynesboone.com

Michael J. Gottlieb (*pro hac vice* forthcoming)
Kristin E. Bender (*pro hac vice* forthcoming)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC  20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan (*pro hac vice* forthcoming)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Movant Blake Lively*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 6th day of August 2025, the above document was served on all parties in accordance with the Federal Rules of Civil Procedure.


<u>/s/ *Samuel T. Mallick*</u>
Samuel T. Mallick

## DECLARATION OF KRISTIN E. BENDER
## IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL THE SKYLINE AGENCY LLC AND ROZA KALANTARI

I, Kristin E. Bender, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an attorney with a *pro hac vice* motion pending before this Court, a partner in the law firm of Willkie Farr & Gallagher LLP, 1875 K Street NW, Washington, DC 20006, and counsel of record for Blake Lively in the above-captioned action.

2.     I respectfully submit this declaration in support of Ms. Lively's Letter-Motion for Motion to Compel third-party witnesses The Skyline Agency LLC's and Roza Kalantari's production in response to the Rule 45 subpoenas duces tecum (respectively the "Skyline Subpoena," and "Kalantari Subpoena," and collectively, the "Subpoenas") served on them.

3.     On March 10, 2025, I served notice of a subpoena to Skyline's counsel, and a process server at my direction served Skyline with the subpoena the following day. Skyline served responses and objections on March 28, 2025, objecting to the definitions, instructions, and scope of the requests.

4.     I first conferred with Skyline's counsel on April 4, 2025 to discuss the scope of the subpoena to Skyline. This began a three-month-long conferral process between myself and Skyline's counsel.

5.     On April 25, 2025, I served notice of a subpoena to Ms. Kalantari's counsel, and four days later, a process server at my direction personally served Ms. Kalantari. On May 16, 2025, Ms. Kalantari served initial responses and objections to the Kalantari subpoena, and Skyline served a privilege log in response to the Skyline subpoena, asserting privilege for six categories of documents.

6.      I understand from documents produced by Skyline that Skyline was involved in setting up thelawsuitinfo dot com, which the Wayfarer Parties use to post so-called "receipts" for public consumption related to the underlying litigation.

7.      I conferred again with Skyline on May 22, 2025 and memorialized the conversion in an email to Skyline's and Ms. Kalantari's counsel outlining our topics of discussion, including the Skyline privilege log's date range, the messaging platforms used, assertion of the common interest privilege, document descriptions, incomplete party names used, and the use of combined privilege entries for text chains spanning weeks, among other topics. Skyline's counsel agreed to provide an amended privilege log addressing some of those topics of discussion the following week. I also memorialized our discussion regarding Ms. Kalantari's responses and objections to her subpoena, in which Ms. Kalantari's counsel agreed to further discuss Request Nos 6, 8, and 10-13 on a later call.

8.      The Skyline Parties served an amended privilege log on May 30, 2025 that specified the types of documents with respect to messaging platforms over which Skyline was asserting privilege. Skyline's counsel took issue with my recitation of what transpired on our prior call, but did not clarify over email any such issues. Skyline's counsel argued that the invoice for Skyline's services and Liner Freedman's unsigned retainer are privileged, and cited case law purporting to support those positions.

9.      Shortly thereafter, on June 2, 2025, I conferred with Skyline again to discuss Skyline's amended privilege log and Ms. Kalantari's first responses and objections to her subpoena.

10.     I summarized this meet and confer in an email to counsel, memorializing that Skyline agreed to confirm whether there would be further adjustments to the privilege log,

particularly to account for messages spanning multiple days. I likewise memorialized that Ms.
Kalantari had agreed to a May 16 deadline for producing all relevant, non-privileged documents
responsive to Requests 1-5, 6, and 9 in light of her persistent failure to produce any documents. I
requested that Ms. Kalantari produce such documents by the following Wednesday. I noted that
Ms. Kalantari's counsel objected to the Kalantari subpoena's definition of "Digital Campaign,"
which related to Ms. Kalantari's objections to Requests 6, 8, and 10-13. I sought to clarify
whether Ms. Kalantari was, or is, an employee of Defendant The Agency Group LLC ("TAG"),
which was discussed during the conferral because Ms. Kalantari's employment with TAG would
impact her obligations to respond to the subpoena and any privilege assertions.

11.    Ms. Kalantari's counsel responded on June 6, 2025, noting that there was "no
reason" to separate out messages in the privilege log because all such messages were privileged.
Counsel also confirmed that "Ms. Kalantari has not, nor has she ever been an employee of
TAG," and as such, the requests were overbroad, intrusive, and overly burdensome on a third
party. Counsel reaffirmed their objection to the definition of "Digital Campaign," but agreed that
Ms. Kalantari would amend her response to state that she would conduct a search for documents
responsive to Request Nos. 6, 8, and 10.

12.    On June 9, 2025, I reiterated to Skyline's and Ms. Kalantari's counsel my
understanding that the presence of an attorney on correspondence does not make that
correspondence privileged, and acknowledged that the parties were at an impasse to resolving
that fundamental disagreement, as well as at an impasse with respect to Request Nos. 11-13. I
also forwarded a LinkedIn profile for Ms. Kalantari that indicated that she was "Head of Digital"
at TAG from August 2024 to the present and sought clarification on Ms. Kalantari's
employment. Given that Ms. Kalantari had still failed to make any production in response to her

subpoena, I requested confirmation by the following day that Ms. Kalantari would make her

complete production, except for Request Nos. 11-13, by Tuesday, June 17, 2025.

13.    On June 12, after noting counsel's unavailability to respond on June 10, Skyline's

and Ms. Kalantari's counsel explained that despite Ms. Kalantari's LinkedIn stating she was

"Head of Digital" at TAG, she was actually "Head of Digital" at Skyline, and TAG retained

Skyline's services for the position. Counsel confirmed the parties were at an impasse with

Request Nos. 11-13 and agreed to supplement Request Nos. 6, 8, and 10, and search for

additional responsive documents or communications. Lastly, with respect to the May 30 Skyline

privilege log, counsel noted that Skyline was building the website at issue in furtherance of the

litigation and at the direction of counsel, which rendered related communications privileged.

14.    On June 20, 2025, I reaffirmed my understanding via email that Skyline's services

were not encompassed within any protection or privilege, and, in light of Ms. Kalantari's

ongoing failure to produce any documents, I requested confirmation that Ms. Kalantari would

make her complete production by June 27, 2025, six weeks after the May 16, 2025 initial

compliance date.

15.    On June 27, 2025, Skyline's and Kalantari's counsel circulated Ms. Kalantari's

supplemental responses and objections to Ms. Lively's subpoena, which incorporated general

objections and specifically objected to Request Nos. 8 and 10, which seek documents and

communications concerning the Scenario Planning Document (attached as Exhibit D to Lively's

Amended Complaint) and communications between Ms. Kalantari and any Content Creator

regarding the NY Litigation, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, or the Film.

These objections were on the basis of failure to describe each item or category with reasonable

particularity, that compliance would be overly broad and unduly burdensome, and on the basis of privilege, trade secrets, and invasion of third party privacy.

16.     The Skyline Parties served a second amended privilege log on July 24, 2025, which rescinded their privilege assertions to all but one category of documents: Signal messages with third parties including Ms. Kalantari, TAG employees, Jed Wallace, some other Defendants, and Defendants' counsel. Ms. Kalantari has failed to produce any documents in response to her subpoena, with all productions made by the Skyline Parties.

17.     I also submit this declaration to place before the Court true and correct copies of the following documents.

18.     A true and correct copy of the first Skyline Privilege Log, dated May 16, 2025 is attached hereto at Tab 1 (APPX. 7-9).

19.     A true and correct copy of the amended Skyline Privilege Log, dated May 30, 2025 is attached hereto at Tab 2 (APPX. 10-12).

20.     A true and correct copy of the second amended Skyline Privilege Log, dated July 24, 2025 is attached hereto at Tab 3 (APPX. 13-14).

21.     A true and correct copy of the Memorandum Opinion and Order on Transfer in 25-mc-00053 from C.D. Cal to S.D.N.Y is attached hereto at Tab 4 (APPX. 15-21).

22.     A true and correct copy of Lively's Subpoena to The Skyline Agency LLC dated March 10, 252 is attached hereto at Tab 5 (APPX. 22-42).

23.     A true and correct copy of Lively's Subpoena to Roza Kalantari dated April 25, 2025 is attached hereto at Tab 6 (APPX. 43-63).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**DECLARATION OF KRISTIN E. BENDER**                                          APPX. 5

Dated: August 5, 2025

Kristin E. Bender
(*pro hac vice* application forthcoming)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com

*Counsel for Blake Lively*

# TAB 1

**PRIVILEGE LOG**

| Category Number | Dates | Participants | Description | Privilege |
|---|---|---|---|---|
| 1. | January 14, 2025 – February 18, 2025 | Roza Kolantari; Rylie Long; Jen Abel; Mitra Ahouraian; Dervia Bryan Freedman; Spencer Freedman; Jamey Heath; Breanna Koslow; Michael Lawrence; Melissa Nathan; Alyx Sealy; Jason Sunshine; Mitz Toskovic; Theresa Troupson; Jed Wallace | Text Message Communication | Attorney-Client Privilege; Work Product |
| 2. | | Liner Freedman Taitelman + Cooley, LLP | Engagement Agreement (Not Signed) | Attorney-Client Privilege; Attorney Work Product; Common Interest Doctrine |
| 3. | February 3, 2025 | Roza Kolantari Jamey Heath | Text Message Communication | Attorney-Client Privilege; |
| 4. | January 6, 2025- February 1, 2025 | Nelson lambertus Regina Flavio R.T. Fernanda Andres Giraldo Roza Kolantari | Internal text communication | Attorney-Client Privilege; Common Interest Doctrine |
| 5. | January 15, 2025 – January 21, 2025 | Roza Kolantari Mitz Toskovic | Discussion re: building of website | Attorney-Client Privilege; Common Interest Doctrine |
| 6. | | Skyline; Roza Kolantari | Invoice for Skyline's services | Attorney-Client Privilege; Attorney Work |

**PRIVILEGE LOG**

| | | | | |
|---|---|---|---|---|
| | | Liner Freedman Taitelman + Cooley, LLP | | Product, Common Interest Doctrine |

# TAB 2

**PRIVILEGE LOG**
**Skyline Parties**
**May 30, 2025**

| Category Number | Dates: | Participants | Type of Document | Privilege Description: | Privilege Basis |
|---|---|---|---|---|---|
| 1. | January 14, 2025 – February 18, 2025 | Roza Kolantari (Skyline); Rylie Long; Jen Abel; Mitra Ahouraian, Esq.; Dervla McNiece Bryan Freedman, Esq.; Spencer Freedman; Jamey Heath; Breanna Koslow; Michael Lawrence; Melissa Nathan; Alyx Sealy; Jason Sunshine, Esq.; Mitz Toskovic; Theresa Troupson, Esq.; Jed Wallace | Text Message Communication via Signal Application | Discussion re: building of website | Attorney-Client Privilege; Work Product; Common Interest Doctrine |
| 2. | | Liner Freedman Taitelman + Cooley, LLP | Word Document | Engagement Agreement (Not Signed) | Attorney-Client Privilege; Attorney Work Product; Common Interest Doctrine |
| 3. | February 3, 2025 | Roza Kolantari; Jamey Heath | SMS Text Message Communication | Text message regarding request for discussion re: building of website | Attorney-Client Privilege; Common-Interest Doctrine |
| 4. | January 6, 2025- February 1, 2025 | Nelson Lambertus (Skyline); Regina Cabrera (Skyline); Flavio Troszczanzuk (Skyline); Fernanda Hoffman (Skyline); | Text Message communication via Discord Application | Internal text communication discussion re: building of website | Attorney-Client Privilege; Work-Product; Common Interest Doctrine |

**PRIVILEGE LOG**
**Skyline Parties**
**May 30, 2025**

| | | | | | |
|---|---|---|---|---|---|
| | | Andres Giraldo (Skyline); Roza Kolantari (Skyline) | | | |
| 5. | January 15, 2025 and January 21, 2025 | Roza Kolantari (Skyline); Mitz Toskovic | SMS Text Message Communication | Discussion re: building of website | Attorney-Client Privilege; Common Interest Doctrine |
| 6. | | Skyline; Roza Kolantari Liner Freedman Taitelman + Cooley, LLP | PDF | Invoice re: fees on website | Attorney-Client Privilege; Attorney Work Product, Common Interest Doctrine |

# TAB 3

| Category Number | Dates: | Participants | Type of Document | Privilege Description: | Privilege Basis |
|---|---|---|---|---|---|
| 1. | January 14, 2025 – February 18, 2025 | Roza Kalantari (Skyline); Rylie Long; Jen Abel; Mitra Ahouraian, Esq.; Dervla McNiece Bryan Freedman, Esq.; Spencer Freedman; Jamey Heath; Breanna Koslow; Michael Lawrence; Melissa Nathan; Alyx Sealy; Jason Sunshine, Esq.; Mitz Toskovic; Theresa Troupson, Esq.; Jed Wallace | Text Message Communication via Signal Application | Discussion re: building of website | Attorney-Client Privilege; Work Product; Common Interest Doctrine |

# TAB 4

JS-6

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11     LINER FREEDMAN TAITELMAN          No. 2:25-mc-00053-MWC-AJR
       + COOLEY, LLP,
12                                        **MEMORANDUM DECISION**
                       Movant,            **AND ORDER TRANSFERRING**
13             v.                         **MOTION TO QUASH TO THE**
                                          **SOUTHERN DISTRICT OF NEW**
14     BLAKE LIVELY, an individual,       **YORK (DKTS. 1, 7, 15)**

15                     Respondent.

16

17

18                                I.

19                          **INTRODUCTION**

20          This is a miscellaneous case initiated in this district on June 13, 2025 by

21     Movant Liner Freedman Taitelman + Cooley, LLP ("Movant") through the filing of

22     a Motion to Quash Subpoena to Produce Documents (the "Motion to Quash")

23     seeking to quash a subpoena arising out of two consolidated actions in the U.S.

24     District Court for the Southern District of New York, Case Nos. 1:24-cv-10049 and

25     1:25-cv-00449 (the "New York Actions").  (Dkt. 1.)  The Motion to Quash was filed

26     as a joint stipulation with Respondent Blake Lively ("Respondent") in accordance

27     with Local Rule 37-2.  (Id.)  Movant contends that the subpoena is "breathtakingly

28     overbroad" and threatens to invade attorney-client privilege by directing the requests

                                                                          **APPX. 16**

to the law firm whose attorneys are counsel of record in the New York Actions.  (<u>Id.</u> at 3.)  Respondent contends that the discovery sought is necessary and justified by the extensive allegations of the law firm's role in the case, but also that the Motion to Quash should be transferred to the Southern District of New York.  (<u>Id.</u> at 5-9.)  Movant does not address Respondent's transfer argument in the initial motion papers.

On June 27, 2025, Respondent filed a Supplemental Memorandum of Law in Opposition to the Motion to Quash (the "Opposition").  (Dkt. 7.)  Also on June 27, 2025, Movant filed a Supplemental Memorandum in Support of the Motion to Quash (the "Supporting Memo.").  (Dkt. 15.)  On July 3, 2025, the Court held an informal discovery conference to discuss the Motion to Quash generally and the parties' views on potential transfer of the motion to the Southern District of New York in particular.  (Dkt. 18.)  At the conclusion of the hearing, the Court advised of its tentative view that the motion should be transferred and advised that a ruling would be forthcoming shortly.  For the reasons set forth below, the Court concludes that Respondent has met her burden to show that exceptional circumstances justify transfer of the Motion to Quash to the Southern District of New York.

## II.

## LEGAL STANDARD

A third party subject to a subpoena may challenge the subpoena in the district where compliance is required.  <u>See</u> Fed. R. Civ. P. 45(d).  However, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  The Advisory Committee Notes for the 2013 Amendment explain that "[i]n the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present."  The

Advisory Committee Notes go on to explain as follows:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45 Advisory Committee Notes for 2013 Amendment.

In assessing the existence of exceptional circumstances under Rule 45(f), courts have considered a number of factors relating to the underlying litigation including the "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." Jud. Watch, Inc. v. Valle Del Sol, Inc., 307 F.R.D. 30, 34 (D.D.C. 2014) (collecting cases); accord E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship, 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015).  Accordingly, the question before the Court "involves a balancing test—whether the circumstances favoring transfer outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."  Valle del Sol, Inc. v. Kobach, 2014 WL 3818490, at *3 (D. Kan. Aug. 4, 2014); accord Le v. Zuffa, LLC, 2017 WL 11632246, at *2 (C.D. Cal. Mar. 17, 2017); Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC, 2016 WL 593546, at *3 (D. Nev. Feb. 12, 2016).

## III.
## DISCUSSION

The Court has considered the factors outlined above related to the underlying litigation and concludes that Respondent has met her burden to show that exceptional circumstances justify transfer of the Motion to Quash to the Southern District of New

York.  As an initial matter, the New York Actions from which the subpoena at issue arises date back to December 31, 2024 and have been heavily litigated over the past six months.  (See S.D.N.Y. Case Nos. 1:24-cv-10049, 1:25-cv-00449.)  The current Fact Discovery Cut-Off in the lead action is August 14, 2025 and the parties were required to achieve substantial completion of document production by July 1, 2025. (See S.D.N.Y. Case No. 1:24-cv-10049, Dkt. 58 at 2.)  The presiding judge has ruled on a wide variety of discovery motions including subpoenas to third parties.  (See S.D.N.Y. Case No. 1:24-cv-10049, Dkts. 216, 266, 284, 303, 339, 341, 355, 357.) These prior discovery rulings by the issuing court create an exceptionally high risk that any ruling by this Court on the issues raised in the Motion to Quash would interfere with the presiding judge's management of the New York Actions.  See, e.g., E4 Strategic Sols., Inc., 2015 WL 12746706, at *3 (finding exceptional circumstances to transfer motion to quash to the issuing court based on high likelihood of inconsistent rulings and citing cases).  For the same reasons, this Court also finds the existence of exceptional circumstances justifying transfer to the Southern District of New York based on judicial economy and efficiency.   See, e.g., Helping Hand Caregivers Ltd. v. Darden Corp., 2016 WL 10987313, at *2 (C.D. Cal. Feb. 17, 2016) (finding exceptional circumstances to transfer motion to quash to the issuing court based on judicial economy and citing cases).

The Court weighs Movant's interest in local resolution of the Motion to Quash against the exceptional circumstances set forth above that justify transfer to the issuing court.  See, e.g., Le, 2017 WL 11632246, at *2 ("Although the Advisory Committee makes clear that the prime concern is consideration of the burdens on local nonparties subject to the subpoena, those burdens must be balanced with the interests in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court." (internal quotation marks omitted)).  However, Movant has failed to articulate any burden that would arise from being required to pursue the Motion to Quash before the issuing court.  Indeed, Movant strangely did not respond

4

to Respondent's transfer arguments in the initial joint stipulation filing. (Dkt. 1 at 8-9.) In the Opposition, Movant emphasizes its right to have this Court decide the Motion to Quash, but never actually argues that it would suffer any burden from being forced to litigate the Motion to Quash before the issuing court. (Dkt. 15 at 6.) To the contrary, Movant acknowledges that it has the ability to litigate before the Southern District of New York and advertises a New York office on its website. (Id.) The Court finds it significant that Movant's attorneys are counsel of record in the New York Actions. Thus, there simply is no burden on Movant from being forced to litigate the Motion to Quash in a forum where Movant's attorneys regularly appear and are litigating the underlying action. See, e.g., Helping Hand Caregivers Ltd., 2016 WL 10987313, at *3 ("Finally, any concern about Jones' burden in resolving Plaintiff's Motion to Compel in the Northern District of Illinois is minimal because he is a party to the underlying action.").

In sum, the exceptional circumstances justifying transfer of the Motion to Quash to the issuing court easily outweigh the non-existent burden on Movant. Thus, the Court concludes that the Motion to Quash must be transferred to the Southern District of New York for resolution by the judge presiding over the New York Actions. See Fed. R. Civ. P. 45(f).

## IV.

## ORDER

Based on the foregoing, pursuant to Federal Rule of Civil Procedure 45(f), it is hereby Ordered that the Clerk of this Court transfer the Motion to Quash (Dkt. 1), the Opposition (Dkt. 7), and the Supporting Memo. (Dkt. 15) to the U.S. District Court for the Southern District of New York to lead Case No. 1:24-cv-10049. See, e.g., In re U.S. Dep't of Educ., 25 F.4th 692, 699 (9th Cir. 2022) ("The order here merely transferred the action to another federal court and did not affect the viability of a claim or defense or the federal appellate courts' ability to correct errors. Thus,

5

the transfer order was nondispositive, and the magistrate judge had jurisdiction to enter it.").  Because the action before this Court is a miscellaneous case initiated by the Motion to Quash, the Court directs the Clerk of Court to administratively close the action in the Central District of California.

IT IS SO ORDERED.


DATED:  July 7, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

6

# TAB 5

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| Blake Lively, et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    1:24-cv-10049; 1:25-cv-00449 |
| Wayfarer Studios LLC, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:　　　　　　　　　　　　The Skyline Agency LLC
c/o Andres F. Giraldo, 1529 Dragon Street, Dallas, TX 75207

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Willkie Farr & Gallagher LLP, 2828 Routh St, Dallas, TX 75201 (kbender@willkie.com) | Date and Time:<br><br>03/28/2025 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:　　03/10/2025

　　　　　　　　　*CLERK OF COURT*
　　　　　　　　　　　　　　　　　　　　OR
　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Michael Gottlieb
_____　　　　　_____
      *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Blake Lively
_____ , who issues or requests this subpoena, are:
Michael Gottlieb, Willkie Farr & Gallagher LLP, 1875 K Street NW #100, Washington, DC 20006, mgottlieb@willkie.com, (202) 303-1442; Kristin Bender, Willkie Farr & Gallagher LLP, 1875 K Street NW, kbender@willkie.com, (202) 303-1245

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

**APPX. 23**

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:24-cv-10049; 1:25-cv-00449

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                        _____
                                                    *Server's signature*

                                               _____
                                                    *Printed name and title*

                                               _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment A**

**DEFINITIONS**

1.      The Uniform Definitions in Discovery Requests that are set forth in Local Civil Rule 26.3 are hereby incorporated by reference.

2.      "Actions" means and collectively refers to the following cases entitled (a) *Lively v. Wayfarer Studios LLC et al.*, U.S. District Court for the Southern District of New York (Case No. 1:24-cv-10049-LJL); (b) *Wayfarer Studios LLC et al. v. Lively et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00449-LJL); (c) *Wayfarer Studios LLC et al. v. The New York Times Company*, Superior Court of California, County of Los Angeles (Case No. 24STCV34662); (d) *Jones v. Jennifer Abel et al.*, United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), and/or (e) *Wallace et al. v. Lively*, United States District Court for the Western District of Texas (Case No. 1:25-cv-00163-DAE), as well the factual allegations or claims contained in all pleadings.

3.      "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written.

4.      "Affiliate" means any and all entities that are wholly owned and/or controlled (directly or indirectly) by, or under common control by an identified individual or entity, including any corporate parent, subsidiaries, or affiliates, and each of their respective officers, directors, employees, or partners.

5.      The terms "all," "any," and "each" shall each be construed as encompassing any and all. *See* Local Civil Rule 26.3.

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. *See* Local Civil Rule 26.3.

7.      "Abel" refers to Jennifer Abel, who is a party to the Action.

8.      "Baldoni" refers to Justin Baldoni, who currently serves as the co-founder and co-chairman of Wayfarer Studios LLC and is a party to the Action.

9.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Civil Rule 26.3.

10.     "Lively Complaint" means the operative complaint filed by Blake Lively in *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. No. 1, the amended complaint, Dkt. No. 84, and any amended complaints filed by Blake Lively in the proceeding.

11.     The "CRD Complaint" means the operative administrative complaint filed by Blake Lively with the California Civil Rights Department on December 20, 2024.

12.     "Concerning" means relating to, referring to, describing, evidencing, or constituting. *See* Local Civil Rule 26.3.

13.     "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. *See* Local Civil Rule 26.3.

14.     The "Film" means the movie "It Ends with Us," co-starring Blake Lively and Justin Baldoni, as described in the Lively Complaint.

15.     "Bryan Freedman" refers to counsel for the Wayfarer Defendants in the Action, as well as his past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

16.     "Heath" refers to Jamey Heath who currently serves as the CEO of Wayfarer Studios LLC and is a party to the Action.

17.    "Including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

18.    "IEWU LLC" shall refer to Defendant It Ends With Us Movie LLC, which is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

19.    "Jonesworks" shall refer to the entity Joneworks LLC, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Stephanie Jones.

20.    "Jonesworks Complaint" means the operative complaint filed by Stephanie Jones and Jonesworks LLC in *Jones v. Jennifer Abel et al.* and removed to the United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), Dkt. No. 1, and any amended complaints filed by Stephanie Jones and/or Jonesworks LLC in the proceeding.

21.    "Liner Freedman Taitelman + Cooley" refers to the law firm serving as counsel for the Wayfarer Defendants in the Action as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

22.    "Lively/Reynolds Companies" shall refer to Ms. Lively and Mr. Reynolds's affiliated entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

23.    "Ms. Lively" shall refer to Blake Lively, who is a party to this Action.

24.    "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to this Action.

25.    "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in the Lively Complaint.

26.    "Nathan" shall refer to Melissa Nathan, who is a party to the Action.

27.    The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. *See* Local Civil Rule 26.3.

28.    "Payment" is defined as any transfer or commitment for future transfer of anything of value, including the exchange of funds (whether in dollars, foreign currency, or any form of electronic or cryptocurrency), cash, securities, loans, reimbursements, refunds, accounting corrections, retainers, goods, services, or otherwise.

29.    "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or associate. *See* Local Civil Rule 26.3.

30.    "Protections for Return to Production Agreement" means the contract executed in November 2023 concerning appropriate behavior during filming and production of the Film, as described in the Lively Complaint.

31.    "Digital Campaign" refers to efforts of the Wayfarer Defendants and/or any affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, the

Wayfarer Defendants, the Film, or the Actions on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Lively Complaint.

32.    "Relating to" or "Relate to" means, without limitation, assessing, comprising, constituting, concerning, referring to, containing, describing, discussing, embodying, evidencing, identifying, pertaining to, reflecting, stating, supporting, or tending to support or refute, or referring in any other way, directly or indirectly, in whole or in part, to the subject matter specified.

33.    "Social Media" means any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to:

> a.    Social Networking Platforms – Facebook, Instagram, Twitter (X), LinkedIn, TikTok, Snapchat, Reddit, and similar platforms.
>
> b.    Content Sharing & Video Platforms – YouTube, Vimeo, Twitch, Rumble, or similar services where videos, reels, or live content can be uploaded or streamed.
>
> c.    Email, Messaging Applications & Direct Communication Platforms – Including, but not limited to, Gmail, Outlook, WhatsApp, Telegram, Signal, Discord, Slack, Facebook Messenger, Instagram DMs, Twitter DMs, or any private messaging feature within a social media platform.
>
> d.    Blogging & Forum Sites – Medium, Substack, WordPress, 4chan, 8kun, or any other user-generated content site where written materials are published.

e.      Influencer & Review-Based Platforms – Yelp, Glassdoor, Trustpilot, Google Reviews, Patreon, or any website where reputational impact can be influenced.

f.      Advertising & Promotional Services – Paid sponsorships, influencer partnerships, promoted posts, advertisements, bots, or algorithm-driven visibility campaigns.

g.      Automated or Third-Party Content Management Tools – Hootsuite, Buffer, Sprout Social, or any platform used to schedule, automate, or track social media activity.

h.      Any Other Online Presence – Any additional websites, forums, private groups, or digital spaces where content related to Plaintiff was discussed, posted, or promoted.

i.      Without limiting the foregoing in any manner, and by way of example only, this definition includes: all original posts, reposts, shares, likes, comments, hashtags, memes, images, videos, stories, threads, and reactions; all drafts, deleted posts, or unpublished content related to Plaintiff; all engagement metrics, analytics, reports, or logs reflecting interactions with content; and all metadata, timestamps, IP addresses, geolocation data, or user activity logs related to content.

34.     "Content Creator" shall refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital services.

35.     "Sony" shall refer to Sony Pictures Entertainment, and its past or present officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

36.    "Sarowitz" shall refer to Steve Sarowitz, who is a party to the Action.

37.    "Street Relations" shall refer to the entity Street Relations, Inc., who is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Jed Wallace.

38.    "TAG" shall refer to The Agency Group PR LLC, which is a party to the Action, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

39.    "Vision PR Parties" refers to Defendants Leslie Sloane and Vision PR, Inc., in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL.

40.    "Wallace" shall refer to Jed Wallace, who is a party to the Action.

41.    "Wayfarer" shall refer to Defendant Wayfarer Studios LLC, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

42.    "Wayfarer SDNY Complaint" shall refer to the Complaint, Dkt. No. 1, the First Amended Complaint, Dkt. No. 50, and any other amended complaints filed by Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends with Us Movie LLC, Melissa Nathan, and Jennifer Abel in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL, as consolidated.

43.    "Wayfarer New York Times Action" shall refer to the lawsuit entitled *Wayfarer Studios LLC et al. v. The New York Times Company*, No. 24STCV34662, filed in the Superior Court of California, County of Los Angeles.

44.    "Wayfarer Defendants" shall refer, individually and collectively, to Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, Wallace, and Street Relations.

45.    "WME" shall refer to William Morris Endeavor Entertainment Agency, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

46.    "You," "Your," or "Yours" refers to the Skyline Agency LLC and any of its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, assigns, or any related entity.

## INSTRUCTIONS

1.    In addition to the specific instructions below, these Requests incorporate by reference the instructions set forth in Rule 45 of the Federal Rules of Civil Procedure.

2.    In responding to these Requests, You shall make a diligent search and produce all responsive Documents that are (i) in Your possession, custody, or control, or (ii) in the possession, custody, or control of any of Your agents, employees, attorneys, accountants, or other representatives or anyone acting on Your behalf, or under Your direction or control, or (iii) otherwise available to You. A Document shall be deemed within Your control if You have the right to secure the document or a copy of the Document from another Person having possession, custody, or control of the Document.

3.    Unless otherwise specified, each Request concerns the time period from July 1, 2024 through the present.

4.    In construing these Requests, You should give effect to the Definitions set forth above. Undefined words and terms shall be given their common meaning. If You are unsure of the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response.

5.    If You do not clearly understand, or have any questions about the definitions or instructions for any Request, please promptly contact counsel for Ms. Lively for clarification.

6.    These Requests should be construed as broadly as possible with all doubts resolved in favor of production. If you believe a Request is ambiguous, use the broadest reasonable interpretation as permitted under the Federal Rules of Civil Procedure and state the nature of the

perceived ambiguity and the interpretation used to resolve it. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive. Except as specifically provided in these Requests, words imparting the singular shall include plural, and vice versa, where appropriate. Except as specifically provided in these Requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate.

7.      For any hard copy production, all documents produced shall be produced as kept in the ordinary course, including identification of the applicable file folder and source. The original of each document requested shall be produced, or an identical copy of each document, imprinted with a Bates identification number. Documents attached to other documents or materials shall not be separated. Documents not otherwise responsive to these requests shall be produced if such documents are attached to documents called for by the Requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials, or mention, discuss, refer to, or explain the documents that are called for by the Requests.

8.      For any hard copy production, identical copies of a document need not be produced. Any copy of a document that varies from the original, whether by reason of handwritten or other notation or any omission, or metadata associated with a file, shall constitute a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control.

9.      If an objection is made to any portion of any Request, (a) state with specificity the objection and legal basis for such objection; (b) state whether any responsive materials are being withheld on the basis of that objection; and (c) answer all remaining portions of the Request to which an objection is not asserted.

10.     If any responsive document is withheld in whole or in part under a claim of privilege or other ground, as to each such document, identify the privilege or other ground being asserted and provide the following information in sufficient detail to permit the Court to evaluate Your claim:

> a.      date, author, addressees, Persons carbon copied or blind carbon copied, including the relationship of those Persons to You or the author of the document;
>
> b.      brief description sufficient to identify the type, subject matter, and purpose of the document;
>
> c.      all Persons to whom the document's contents have been disclosed;
>
> d.      the party who is asserting the privilege;
>
> e.      the nature of the privilege, immunity or protection asserted, the Person(s);
>
> f.      asserting the privilege, immunity or protection, and/or the specific reason why the Document is not being produced; and
>
> g.      the same information referenced in 10(a)-(f) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production.

11.     If a portion of any responsive document is withheld under a claim of privilege or other ground, any non-privileged portion of the document must be produced with the withheld portion redacted, with the redaction language indicating that the information is being withheld for privilege.

12.     If any responsive document was, but no longer is, in Your possession, custody, or control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or

involuntarily to others; or (d) otherwise disposed of; and (e) in each instance identify the contents, author(s), date prepared or received, name and address of its current or last known custodian, and the date and circumstances surrounding such disposition.

13.     To the extent that the native format for transactional or other data responsive to these Requests is not compatible with Microsoft Office products (*e.g.*, Microsoft Excel, Microsoft Word, Microsoft Access, etc.), the data shall be produced in a usable format. If You need assistance in determining what constitutes a usable format, You shall promptly contact Ms. Lively's counsel.

14.     These Requests are continuing in nature and all documents coming into Your possession, custody or control which would have been produced had they been available earlier shall be produced forthwith.

15.     Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

### PRODUCTION OF ESI

1.     Format: ESI should be produced in load-ready standard format, including single-page, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format. If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of sent email messages should include the BCC line.

2.     Format – Native Files: Spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, CSV) and Media files (*e.g.*, .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native

Format, except where such files are redacted. For Google Documents, production of an export in a comparable format will constitute native production (*e.g.*, Google Sheets Document exported in Microsoft Excel format). A TIFF placeholder endorsed with the corresponding Bates number and confidentiality designation (if any) shall be produced for all ESI produced in Native Format.

       3.      Word Documents and PowerPoint Documents shall be produced in both native and TIFF format, with track changes and speaker notes imaged.

       4.      De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication should be done across the entire collection (global de-duplication) and the ALL CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that Document. Should the ALL CUSTODIAN or FILEPATH metadata fields produced become outdated due to processing of additional data or production of documents of additional custodians, an overlay file providing all the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

       5.      Technology-Assisted Review/Analytics: Predictive coding/technology-assisted review shall not be used for the purpose of culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies. Before threading is used to

reduce the volume of emails to review, the producing party shall reach out to Ms. Lively's counsel to ensure the process being utilized by the vendor is industry standard. If it is agreed that threading may be used to reduce the volume of documents to produce, the producing party shall produce the Inclusive emails, defined as those emails within an email thread containing all unique content as determined by commonly accepted analytics tools. An additional metadata field containing the *Thread ID* shall be produced so that Inclusive emails can be reviewed together. The requesting party may request the production of a lesser-included email or emails, and any such reasonable request(s) shall not be refused where the Document is available in the producing party's Document collection.

6.     Metadata: Metadata produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildID(s), AllCustodian, FilePath, Subject, From, To, CC, BCC, DateSent, TimeSent, DateReceived, TimeReceived, FileType (*e.g.*, Email, Attachment, Loose File, Hard Copy), FileName, Author, DateCreated, DateModified, MD5 Hash (or SHA-1, whichever is used for deduplication), File Size, FileExtension, DocLink, and TextPath.

7.     Message Metadata: In addition to the fields listed in Section 6 above, Metadata for text and chat messages produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: Message Thread ID, Message Participants, Message From, Message To, Message DateTime Sent, Message Application Name (*e.g.*, Signal, WhatsApp, etc.)., Message Deleted, Message Deleted on, Message Deleted By, Message Edited, Message Edited On, Message Edited By.

8. Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any information to be redacted on the basis of privilege. The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent email.

9. Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

10. Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

11. Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit productions via SFTP. If that is not possible, parties should discuss with counsel for Ms. Lively and transmit the encryption key or password to the receiving party, or by phone call or text message, contemporaneously with sending the encrypted media.

12. Redactions: If excels are to be redacted, redactions must be applied natively. If other Documents that the parties have agreed to produce only in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning or relating to Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Actions, or the Digital Campaign.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications concerning digital services or activity concerning or relating to Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Actions, or the Digital Campaign.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications concerning or relating to www.thelawsuitinfo.com.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications identifying all Person(s) that established, own, operate, or are otherwise associated with www.thelawsuitinfo.com since its inception (regardless of whether or not that Person is designated as the registrant, administrative contact, technical contact, and/or billing contact), including but not limited to the name, full contact information (e.g., physical address(es), email address(es), telephone number(s)), and IP address(es) for each such Person.

**REQUEST FOR PRODUCTION NO. 5:**

All contracts, Agreements, understandings, or other arrangements concerning or applicable to the Wayfarer Defendants, the Film, the Actions, or the website www.thelawsuitinfo.com.

**REQUEST FOR PRODUCTION NO. 6:**

All invoices, bills, and payment information in connection with www.thelawsuitinfo.com including, but not limited to, the form of any payment (e.g., credit card or banking information)

and any bill or invoice related to the original domain registration, any transfer, or additional DNS services.

# TAB 6

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | |
|---|---|
| Blake Lively, et al. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.  1:24-cv-10049; 1:25-cv-00449 |
| Wayfarer Studios LLC, et al. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                              Roza Kalantari
                    5440 Pebblebrook Dr., Dallas TX 75229-5507
_____
_(Name of person to whom this subpoena is directed)_

☑ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Willkie Farr & Gallagher LLP, 2828 Routh St, Dallas, TX 75201 (kbender@willkie.com) | Date and Time: 05/16/2025 5:00 pm |
|---|---|

❑ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

       The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    04/25/2025

              _CLERK OF COURT_

                                                OR

_____        /s/ Michael Gottlieb
_Signature of Clerk or Deputy Clerk_        _____
                                                 _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Blake Lively
_____, who issues or requests this subpoena, are:
Michael Gottlieb, Willkie Farr & Gallagher LLP, 1875 K Street NW #100, Washington, DC 20006, mgottlieb@willkie.com, (202) 303-1442; Kristin Bender, Willkie Farr & Gallagher LLP, 1875 K Street NW, kbender@willkie.com, (202) 303-1245

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

**APPX. 44**

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    1:24-cv-10049; 1:25-cv-00449

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                        _____
                                                                          *Server's signature*

                                                                   _____
                                                                           *Printed name and title*

                                                                   _____
                                                                             *Server's address*

Additional information regarding attempted service, etc.:

**APPX. 45**

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment A**

## DEFINITIONS

1.      The Uniform Definitions in Discovery Requests that are set forth in Local Civil Rule 26.3 are hereby incorporated by reference.

2.      "Affiliate" means any and all entities that are wholly owned and/or controlled (directly or indirectly) by, or under common control by an identified individual or entity, including any corporate parent, subsidiaries, or affiliates, and each of their respective officers, directors, employees, or partners.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all. *See* Local Civil Rule 26.3.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. *See* Local Civil Rule 26.3.

5.      "Abel" refers to Jennifer Abel, who is a party to the Consolidated Action.

6.      "Baldoni" refers to Justin Baldoni, who currently serves as the co-founder and co-chairman of Wayfarer Studios LLC and is a party to the Consolidated Action.

7.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Civil Rule 26.3. Communications shall include without limitation Social Media Communications.

8.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting. *See* Local Civil Rule 26.3.

9.      "Consolidated Action" means and collectively refers to the following cases entitled (a) *Lively v. Wayfarer Studios LLC et al.*, U.S. District Court for the Southern District of New York (No. 1:24-cv-10049-LJL); and (b) *Wayfarer Studios LLC et al. v. Lively et al.*, U.S. District Court for the Southern District of New York (No. 1:25-cv-00449-LJL).

1

10.    "Content Creator" shall refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital services.

11.    "Digital Campaign" refers to efforts of the Wayfarer Defendants and/or any Affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, Ms. Lively's and Mr. Reynolds's families, the Wayfarer Defendants, the Film, or the Consolidated Action on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Lively Complaint.

12.    "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. *See* Local Civil Rule 26.3.

13.    "ESI" shall mean information generated, received, processed, recorded, manipulated, communicated, stored, or used in digital form including metadata (*e.g.*, author, recipient, file creation date, file modification date, *etc.*). ESI includes, without limitation, data stored on or in computer servers, computer hard drives, computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy discs, non-volatile memory including flash memory devices, thumb drives, zip drives, external hard drives, internal or external websites, cloud-based storage systems, personal digital assistants (such as Palm or BlackBerry devices), cell phones, electronic voicemail systems, text messages, instant messages, emails and attachments to emails, or any device or medium capable of storing data in any format. ESI also includes, without limitation, output resulting from the use of any software

2

program or application, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, text messages, instant messages, Bloomberg messages, Social Media postings or activity, Internet bulletin boards, or Internet chat rooms, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment, subject to the limitations set forth in Rule 45(e)(1)(D) of the Federal Rules of Civil Procedure. All ESI produced shall include sufficient metadata fields to identify, at minimum, its author, recipient, date and time of creation and modification, and where the Document was located.

14. The "Film" means the movie "It Ends with Us," co-starring Blake Lively and Justin Baldoni, as described in the Lively Complaint.

15. "Heath" refers to Jamey Heath who currently serves as the CEO of Wayfarer Studios LLC and is a party to the Consolidated Action.

16. "IEWU LLC" shall refer to Defendant It Ends With Us Movie LLC, which is a party to the Consolidated Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or Affiliates.

17. The term "including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

18. Lively Complaint" means the operative amended complaint filed by Ms. Lively in *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. No. 84, and any amended complaints filed by Ms. Lively in the proceeding.

19. "Lively/Reynolds Companies" shall refer to Ms. Lively's and Mr. Reynolds's affiliated entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint

3

Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or Affiliates.

20.     "Lively/Reynolds Family" means any family member of Ms. Lively or Mr. Reynolds, living or deceased, including but not limited to their children, parents, siblings, or any other known relative.

21.     "Local Civil Rule" shall refer to the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2025.

22.     "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in the Lively Complaint.

23.     "Ms. Lively" shall refer to Blake Lively, who is a party to the Consolidated Action.

24.     "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to the Consolidated Action.

25.     "Nathan" shall refer to Melissa Nathan, who is a party to the Consolidated Action.

26.     The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or Affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. *See* Local Civil Rule 26.3.

27.     "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or associate. *See* Local Civil Rule 26.3.

28.     The terms "relating to" or "relate to" means, without limitation, assessing, comprising, constituting, concerning, referring to, containing, describing, discussing, embodying, evidencing, identifying, pertaining to, reflecting, stating, supporting, or tending to support or refute, or referring in any other way, directly or indirectly, in whole or in part, to the subject matter specified.

29.     "Sarowitz" shall refer to Steve Sarowitz, who is a party to the Consolidated Action.

30.     "Social Media" means any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to:

a.     Social Networking Platforms – Facebook, Instagram, Twitter (X), LinkedIn, TikTok, Snapchat, Reddit, WhatsApp, Signal, and similar platforms.

b.     Content Sharing & Video Platforms – YouTube, Vimeo, Twitch, Rumble, or similar services where videos, reels, or live content can be uploaded or streamed.

c.     Email, Messaging Applications & Direct Communication Platforms – Including, but not limited to, Gmail, Outlook, WhatsApp, Telegram, Signal, Discord, Slack, Facebook Messenger, Instagram DMs, Twitter DMs, or any private messaging feature within a social media platform.

d.     Blogging & Forum Sites – Medium, Substack, WordPress, 4chan, 8kun, or any other user-generated content site where written materials are published.

5

e.      Influencer & Review-Based Platforms – Yelp, Glassdoor, Trustpilot, Google Reviews, Patreon, or any website where reputational impact can be influenced.

f.      Advertising & Promotional Services – Paid sponsorships, influencer partnerships, promoted posts, advertisements, bots, or algorithm-driven visibility campaigns.

g.      Automated or Third-Party Content Management Tools – Hootsuite, Buffer, Sprout Social, or any platform used to schedule, automate, or track social media activity.

h.      Any Other Online Presence – Any additional websites, forums, private groups, or digital spaces where content related to Plaintiff was discussed, posted, or promoted.

i.      Without limiting the foregoing in any manner, and by way of example only, this definition includes: all original posts, reposts, shares, likes, comments, hashtags, memes, images, videos, stories, threads, and reactions; all drafts, deleted posts, or unpublished content related to Plaintiff; all engagement metrics, analytics, reports, or logs reflecting interactions with content; and all metadata, timestamps, IP addresses, geolocation data, or user activity logs related to content.

31.     "Street Relations" shall refer to the entity Street Relations, Inc., as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or Affiliates, including, without limitation, Jed Wallace.

6

32.    "TAG" shall refer to The Agency Group PR LLC, which is a party to the Consolidated Action, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or Affiliates.

33.    "Vision PR Parties" refers to Defendants Leslie Sloane and Vision PR, Inc., in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL.

34.    "Wallace" shall refer to Jed Wallace, as described in the Lively Complaint.

35.    "Wayfarer" shall refer to Defendant Wayfarer Studios LLC, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or Affiliates.

36.    "Wayfarer Defendants" shall refer, individually and collectively, to Wayfarer, IEWU LLC, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, Wallace, and Street Relations.

37.    "You," "Your," or "Yours" refers to Roza Kalantari and includes any of her representatives, servants, agents, employees, officers, Affiliates, subsidiaries, parent companies, third parties, as well as any entities over which she has control.

## INSTRUCTIONS

1.    In responding to these Requests, You shall make a diligent search and produce all responsive Documents that are (i) in Your possession, custody, or control, or (ii) in the possession, custody, or control of any of Your agents, employees, attorneys, accountants, or other representatives or anyone acting on Your behalf, or under Your direction or control, or (iii) otherwise available to You. A Document shall be deemed within Your control if You have the right to secure the Document or a copy of the Document from another Person having possession, custody, or control of the Document

2.    Unless otherwise specified, each Request concerns the time period from May 1, 2024 through the present.

7

3.      In construing these Requests, You should give effect to the definitions set forth above. Undefined words and terms shall be given their common meaning. If You are unsure of the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response.

4.      If You do not clearly understand, or have any questions about the definitions or instructions for any Request, please promptly contact counsel for Ms. Lively for clarification.

5.      These Requests should be construed as broadly as possible with all doubts resolved in favor of production. If you believe a Request is ambiguous, use the broadest reasonable interpretation as permitted under the Federal Rules of Civil Procedure and state the nature of the perceived ambiguity and the interpretation used to resolve it. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive. Except as specifically provided in these Requests, words imparting the singular shall include plural, and vice versa, where appropriate. Except as specifically provided in these Requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate.

6.      For any hard copy production, all Documents produced shall be produced as kept in the ordinary course, including identification of the applicable file folder and source. The original of each Document requested, or an identical copy of each Document,  shall be produced imprinted with a Bates identification number. Documents attached to other Documents or materials shall not be separated and distinct Documents shall not be merged into a single record. Documents not otherwise responsive to these Requests shall be produced if such Documents are attached to Documents called for by the Requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials, or mention, discuss, refer to, or explain the

8

Documents that are called for by the Requests. Documents and attachments with affixed notes (*i.e.*, Post-its) shall be imaged both with and without the affixed notes so that both the content of the affixed notes and any content obscured by the affixed notes are produced.

7.    For any hard copy production, identical copies of a Document need not be produced. Any copy of a Document that varies from the original, whether by reason of handwritten or other notation or any omission, or metadata associated with a file, shall constitute a separate Document and must be produced, whether or not the original of such a Document is within your possession, custody, or control.

8.    If an objection is made to any portion of any Request, (a) state with specificity the objection and legal basis for such objection; (b) state whether any responsive materials are being withheld on the basis of that objection; and (c) answer all remaining portions of the Request to which an objection is not asserted.

9.    If any responsive Document is withheld in whole or in part under a claim of privilege or other ground, as to each such Document, identify the privilege or other ground being asserted and provide the following information in sufficient detail to permit the Court to evaluate Your claim:

>    a.    date, author, addressees, Persons carbon copied or blind carbon copied, including the relationship of those Persons to You or the author of the Document;

>    b.    brief description sufficient to identify the type, subject matter, and purpose of the Document;

>    c.    all Persons to whom the Document's contents have been disclosed;

d.     the Person(s) who authored or created or sent the Document or the Person(s) who made the Communication;

e.     the Person(s) asserting the privilege, immunity, or protection, and/or the specific reason why the Document is not being produced;

f.     the nature of the privilege, immunity, or protection asserted; and

g.     the same information referenced in 9(a)-(f) above for each enclosure or attachment to each listed Document if the enclosure or attachment is also withheld from production.

10.    If a portion of any responsive Document is withheld under a claim of privilege or other ground, any non-privileged portion of the Document must be produced with the withheld portion redacted, with the redaction language indicating that the information is being withheld for privilege.

11.    If any responsive Document was, but no longer is, in Your possession, custody, or control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of; and (e) in each instance identify the contents, author(s), date prepared or received, name and address of its current or last known custodian, and the date and circumstances surrounding such disposition.

12.    To the extent that the native format for transactional or other data responsive to these Requests is not compatible with Microsoft Office products (*e.g.*, Microsoft Excel, Microsoft Word, Microsoft Access, etc.), the data shall be produced in a usable format. If You need assistance in determining what constitutes a usable format, You shall promptly contact Ms. Lively's counsel.

13.    In addition to the specific instructions below, these Requests incorporate by reference the instructions set forth in Rule 26(e) of the Federal Rules of Civil Procedure. You are

10

required to provide, by way of supplementary responses hereto, such additional information as may be obtained by You or any Person purporting to act on Your behalf that will augment or modify Your answers now given to the following requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, You are required to supplement these responses and provide additional Documents or things without a specific request from Ms. Lively.

14.     Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## PRODUCTION OF ESI

1.     Format: ESI should be produced in load-ready standard format, including single-page, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format. If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of sent email messages should include the BCC line.

2.     Format – Native Files: Spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, CSV) and Media files (*e.g.*, .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format, except where such files are redacted. For Google Documents, production of an export in a comparable format will constitute native production (*e.g.*, Google Sheets Document exported in Microsoft Excel format). A TIFF placeholder endorsed with the corresponding Bates number and confidentiality designation (if any) shall be produced for all ESI produced in Native Format.

11

3.      Word Documents and PowerPoint Documents shall be produced in both native and TIFF format, with track changes and speaker notes imaged.

4.      De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication should be done across the entire collection (global de-duplication) and the ALL CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that Document. Should the ALL CUSTODIAN or FILEPATH metadata fields produced become outdated due to processing of additional data or production of Documents of additional custodians, an overlay file providing all the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

5.      Technology-Assisted Review/Analytics: Predictive coding/technology-assisted review shall not be used for the purpose of culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies. Before threading is used to reduce the volume of emails to review, the producing party shall reach out to Ms. Lively's counsel to ensure the process being utilized by the vendor is industry standard. If it is agreed that threading may be used to reduce the volume of Documents to produce, the producing party shall produce the Inclusive emails, defined as those emails within an email thread containing all unique content as

determined by commonly accepted analytics tools. An additional metadata field containing the *Thread ID* shall be produced so that Inclusive emails can be reviewed together. The requesting party may request the production of a lesser-included email or emails, and any such reasonable request(s) shall not be refused where the Document is available in the producing party's Document collection.

6.      Metadata: Metadata produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildID(s), AllCustodian, FilePath, Subject, From, To, CC, BCC, DateSent, TimeSent, DateReceived, TimeReceived, FileType (*e.g.*, Email, Attachment, Loose File, Hard Copy), FileName, Author, DateCreated, DateModified, MD5 Hash (or SHA-1, whichever is used for deduplication), File Size, FileExtension, DocLink, and TextPath.

7.      Message Metadata: In addition to the fields listed in Section 6 above, Metadata for text and chat messages produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: Message Thread ID, Message Participants, Message From, Message To, Message DateTime Sent, Message Application Name (*e.g.*, Signal, WhatsApp, etc.)., Message Deleted, Message Deleted on, Message Deleted By, Message Edited, Message Edited On, Message Edited By.

8.      Embedded Objects:  Embedded files shall be produced as attachments to the Document that contained the embedded file, with the parent/child relationship preserved. The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree that logos need not be extracted as separate Documents as long as they are displayed in the parent Document.

9.      Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any information to be redacted on the basis of privilege. The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent email. Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

10.     Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

11.     Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

12.     Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit productions via SFTP. If that is not possible, parties should discuss with counsel for Ms. Lively and transmit the encryption key or password to the receiving party, or by phone call or text message, contemporaneously with sending the encrypted media.

13.     Redactions: If excels are to be redacted, redactions must be applied natively. If other Documents that the parties have agreed to produce only in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, or the Lively/Reynolds Family.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications with or concerning Baldoni, Heath, Wayfarer, or Sarowitz.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications with or concerning Wallace or Street Relations.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications with or concerning Abel.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications concerning the Film or the Marketing Plan.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications concerning the Digital Campaign.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications concerning the Consolidated Action.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications concerning the Scenario Planning Document, attached as Exhibit D to the Lively Complaint.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning any meeting related to the Scenario Planning Document, attached as Exhibit D to the Lively Complaint.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications between You and any Content Creator concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, or the Film.

**REQUEST FOR PRODUCTION NO. 11:**

Documents such as phone billing records, sufficient to show all phone numbers and phone service providers You have used from May 1, 2024 to present. Non-responsive information may be redacted.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, including mobile phone billing records, sufficient to show all calls You made and/or received relating to the allegations in the Lively Complaint from May 1, 2024 to present. Non-responsive information may be redacted.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, including mobile phone billing records, sufficient to show the calls You made and/or received to any Wayfarer Defendant from May 1, 2024, to the present. Non-responsive information may be redacted.