**WILLKIE FARR & GALLAGHER** LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

August 25, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *Lively v. The Skyline Agency LLC, et al.*, No. 1:25-mc-347 (LJL)

Dear Judge Liman:

    Plaintiff Blake Lively respectfully submits this reply in support of her motion to compel The Skyline Agency LLC and Roza Kalantari (the "Skyline Parties") to produce the documents withheld on privilege grounds in response to Ms. Lively's subpoenas (the "Subpoenas").

    The Skyline Parties' opposition asserts that Ms. Lively "has not met her initial burden to show relevance." ECF No. 26 ("Opp."), at 2. But the Skyline Parties have conceded the relevance of the withheld materials by listing them on the privilege log in the first place. The Skyline Parties responded to Ms. Lively's subpoenas by objecting to her instruction to list all "responsive" documents on a privilege log, ECF No. 3, at 39, 60, and instead agreed to "produce information required by Rule 26(b)(5)(A)(ii), if appropriate." Reply Declaration of Kristin E. Bender ("Bender Reply Decl."), Ex. A, at 3. That rule applies "[w]hen a party withholds information *otherwise discoverable* by claiming that the information is privileged or subject to protection as trial-preparation material," Fed. R. Civ. P. 26(b)(5)(A) (emphasis added), and under the plain text of Rule 26, in order to be "discoverable," information must be "relevant." *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). By agreeing to produce a privilege log as to "otherwise discoverable" material, and then listing the disputed materials on their privilege log, the Skyline Parties have conceded the relevance of those materials—indeed, they have conceded that *but for* the privilege objections stated on the privilege log, the materials are "otherwise discoverable," implying not only that they are relevant but that they are "proportional to the needs of the case" under all the considerations set forth in Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1). The fact that a party seeking discovery bears the burden to demonstrate relevance when relevance is disputed, as in the case cited by the Skyline Parties, has no application here. *See Cohen v. Grp. Health Inc.*, 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022). Ms. Lively properly challenged the only objection to discoverability that the Skyline Parties had raised.[1]

---

[1] In any event, the withheld materials are plainly relevant to Ms. Lively's claims of an ongoing retaliatory campaign, of which the Wayfarer Parties' lawsuit and the "website" were a part. ECF No. 520, at ¶¶ 296-312; *see* ECF No. 355, at 3-4. The Skyline Parties have conceded as much, because they *have already produced* the other five categories of materials listed on earlier versions of their privilege log, which were described in *identical* terms to the materials they continue to withhold.

On the merits of the Skyline Parties' privilege claim, the Skyline Parties have seemingly dropped the only rationale for their privilege claim that they had asserted thus far: that "Skyline was instructed by a law firm to assist in procuring and posting publicly available documents on a website." Bender Reply Decl. Ex B, at 5; *see id.* at 2 ("Skyline building a website in furtherance of a litigation and at the direction of counsel"); *id.* at 5 ("The entire chain and each message in the chain address the same subject, namely, the building of a website at the direction of counsel, and was circulated among the same parties. Since counsel therefore was a sender or recipient of each message in the chain, the entire chain is privileged. . . ."). Under that rationale, the holder of the privilege would have been the Wayfarer Parties, and the privilege assertion apparently rested on the narrow exception to waiver for communications with third-party professionals whose inclusion is necessary to the provision of legal advice to the attorney's clients. *See, e.g.*, *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 171 F. Supp. 3d 136, 140 (S.D.N.Y. 2016); ECF No. 2, at 12-13.[2] Implicitly acknowledging that, at a minimum, either Ms. Kalantari's inclusion on the communications or the communications' subject matter would not meet the requirements of that narrow exception, the Skyline Parties have seemingly abandoned that argument entirely.

Instead, for the first time, the Skyline Parties have advanced an argument in support of their privilege claim that does not appear on any of their multiple privilege logs and was never advanced in their conferrals with Ms. Lively's counsel: that the participants on the Signal chain (including Ms. Kalantari) were soliciting, and the counsel copied on the withheld Signal thread were providing, "legal advice regarding the content to be placed on the Website." Opp. at 2. According to the Skyline Parties, the inclusion of numerous differently-situated parties on the communications does not destroy privilege because *all* of the participants shared an identical legal interest with respect to the legal implications surrounding what materials to post on the Website. *Id.* at 3.

Even if that characterization of the withheld communications were accurate, and even if it had been timely and adequately asserted (for example, in any of the prior conferrals or in any of the numerous versions of a privilege log that the Skyline Parties served on Ms. Lively), the Skyline Parties have not met their burden to demonstrate attorney-client privilege based on this rationale. Although they now claim that they (and all other participants on the Signal chain) were seeking legal advice from the Liner Freedman attorneys relating to the legal implications of posting material on a website, the Skyline Parties notably do not say when, or even whether, Ms. Kalantari and Skyline ever retained the included attorneys for the purpose of seeking such advice, or otherwise understood themselves to be in an attorney-client relationship with those attorneys for that purpose.[3] Nor do they say when (or even whether) the Skyline

---

*Compare* ECF No. 3, at 14-15 (categories 3, 4, and 5 describing now-produced materials concerning "building of website"), *with* ECF No. 3, at 17 (category 1 describing remaining withheld materials as regarding "building of website"). Their objection now that the *website*'s contents "do not support" Ms. Lively's claims, Opp. at 2, is a non sequitur, because Ms. Lively is seeking to compel production of (and the Skyline Parties *have already produced*) communications *about* the website, not the publicly-available website itself.

[2] Because the materials in dispute are relevant to Ms. Lively's federal claims, these privilege assertions are governed by federal law. *See Liner Freedman Taitelman Cooley, LLP v. Lively*, 2025 WL 2205973, at *7 n.11 (S.D.N.Y. Aug. 4, 2025). And, as this Court recently held, this Court must apply Second Circuit precedent to these issues "despite the fact that this case was transferred" from a district court in another circuit. *Id.* at *4 n.7.

[3] Of course, the Skyline Parties have *since* retained Meister Seelig & Fein PLLC and Liner Freedman Taitelman + Cooley,

Parties, Mr. Wallace, and the other participants ever entered into a common interest agreement with respect to the shared interest they now assert, much less that such an agreement was in existence at the time of the disputed communications. *See, e.g.*, *United States v. Gentile*, 2024 WL 3343983, at *6 (E.D.N.Y. July 8, 2024) ("The burden is on the party asserting the privilege to show that an explicit or implied common-interest agreement existed at the time the relevant communication was made."). The Skyline Parties have not carried their burden either to demonstrate that the disputed materials were privileged in the first place, or that the common interest doctrine shields them from waiver. *See, e.g.*, *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *3 (S.D.N.Y. May 23, 2016) (rejecting privilege assertion in part based on Second Circuit precedent rejecting privilege claims because the "privilege logs simply did not provide enough information to support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation") (cleaned up).

Moreover, accepting this privilege assertion, on this record, would explode the "narrow[]" construction of the attorney-client privilege as applied to communications with third-party PR professionals and "broaden the privilege well beyond prevailing parameters." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). Every litigant would be free to communicate widely with professionals and individuals of all kinds, copying their attorneys, and—when challenged—simply assert that the communications were privileged because the attorneys were there to monitor the communications and advise if any of the matters under discussion could expose *that particular group* of participants to independent legal liability, an interest shared in common by all members of *that* group. Even if that fact pattern could would be consistent with a valid privilege claim in *some* circumstances, a successful privilege assertion would require factual showings that the Skyline Parties have utterly failed to make here.[4]

Finally, to the extent the Skyline Parties' new arguments raise any doubts as to their privilege assertions, the Court should review the disputed materials *in camera* to evaluate those claims. ECF No. 2, at 15.

Respectfully submitted,

/s/ Michael J. Gottlieb

---

LLP to represent them in connection with Ms. Lively's subpoenas. But that is not the same thing as representing the Skyline Parties in connection with potential liability arising from their activities in January 2025 and, importantly, that is not a legal interest that the Skyline Parties share in common with the other participants on the Signal chain, who were not subject to these Subpoenas.

[4] The Skyline Parties have apparently abandoned their work-product assertion, which they do not defend. *See generally* Opp. In any event, their latest rationale for defending attorney-client privilege—that the withheld communications were made in connection with deciding what materials to publish on a website—is inconsistent with a claim of work-product protection, which would require that the communications have been made in aid of preparation for *litigation*. *See, e.g.*, ECF No. 2, at 14; *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *9 (S.D.N.Y. Oct. 4, 2024).